## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Walsh Bishop Associates, Inc., | Court File No. *11-2673 DSD/AJB* |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| Keith O'Brien, Ian Scott,<br>David Serrano, and WBA Partners, Inc., | |
| Defendants. | |

Plaintiff Walsh Bishop Associates, Inc., as and for its Complaint against defendants Keith O'Brien, Ian Scott, David Serrano and WBA Partners, Inc. states and alleges as follows:

### NATURE OF ACTION

1.     Walsh Bishop Associates, Inc. ("WBA") is a small employee-owned, architectural firm that services a wide range of clients in the corporate and hospitality industries.  O'Brien, Scott, and Serrano are former officers and Executive Committee members of WBA who were responsible for leading the firm and developing business through challenging economic times. As set forth below, while employed by WBA defendants solicited each other to work for direct competitors; misappropriated confidential customer information and other confidential data; misappropriated WBA's trade name by deliberately creating a similarly-sounding company, WBA Partners, Inc., to directly compete with WBA; and asked a potential WBA customer to forestall negotiations with WBA for two weeks while O'Brien, Scott and Serrano made arrangements with their future employers to steal customers and opportunities from WBA.  This is an action to enjoin and collect damages from defendants for wrongfully taking proprietary information and interfering with Walsh Bishop's relationships with its clients and prospects.  The


SCANNED
SEP 1 5 2011
U.S. DISTRICT COURT MPLS

information sought to be protected includes but is not limited to business plans, customer lists, leads, strategy and marketing information, and financial data. If defendants are not enjoined, Walsh Bishop and its employees will suffer irreparable harm and defendants will be unjustly enriched in a highly competitive market.

2.     O'Brien, Scott, and Serrano obtained WBA's trade secrets through a variety of illegal schemes. They have breached contractual and common law duties to WBA and have violated federal and state statutes. They further used WBA Partners, Inc. to infringe upon WBA's rights. If defendants are not enjoined – or to the extent they have or will profit from their wrongful schemes – WBA seeks damages.

### PARTIES, JURISDICTION, AND VENUE

3.     Walsh Bishop Associates, Inc. is an employee-owned architectural firm with approximately 22 employees that serves clients in the Twin Cities and in various other locations. It is organized under the laws of Minnesota and licensed to do business in Minnesota as well several other states. Its principal place of business is Minneapolis, Minnesota. Walsh Bishop has been in business for nearly 27 years and its name and reputation are well-known locally, nationally and even internationally in the architectural community.

4.     Keith O'Brien began working for WBA in 2002. O'Brien is not a licensed architect. He served as the Business Development and Vice President of the Hospitality, Gaming and Entertainment Market for WBA beginning 2002. He became an owner and shareholder on January 1, 2004. He remained an owner when the firm converted to an employee-owned firm in December, 2007. O'Brien was an officer of the firm, serving as Vice President as well as being on the firm's Executive Committee. O'Brien was also the Account Manager for the firm's Entertainment and Hospitality Group. During the time that he worked for WBA, O'Brien

continuously held himself out as WBA's Vice President, Partner and Principal. His employment was terminated August 31, 2011.

5.    Scott is a creative designer who began working for WBA in 2008. Like O'Brien, he was an officer of the firm, serving as Vice President, Executive Committee member and Design Principal.   During the time he worked for WBA, he continuously himself out as WBA's Vice President and Principal.

6.    Serrano is a licensed architect who began working for WBA in 2008. Like O'Brien and Scott, he was an officer of the firm, serving as Vice President and Executive Committee member.   During the time he worked for WBA, Serrano held himself out as WBA's Vice President and Principal.

7.    Upon information and belief, O'Brien, Scott and Serrano incorporated WBA Partners, Inc. through the Grannis and Hauge, P.A. law firm on June 27, 2011. WBA Partners, Inc. was formed as a domestic business corporation organized under the laws of Minnesota. O'Brien, Scott and Serrano began using the WBA Partners, Inc. name in connection with WBA's business in a deliberate attempt to usurp WBA's good name and reputation for their own personal benefit.

8.    The defendants are personally subject to jurisdiction within Minnesota.

9.    This Court has subject matter jurisdiction over the federal claims in this dispute under Title 28, United States Code Section 1331. The state law claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution. Therefore, the Court has pendent jurisdiction over the pendent claims under Title 28, United States Code Section 1367.

10.    The District of Minnesota is an appropriate venue under Title 28, United States Code Sections 1391(b)(1), (b)(2), and (b)(3) because it is the district in which the defendants reside and a substantial part of the events and/or omissions giving rise to the Complaint occurred within the state of Minnesota.

## FACTUAL BACKGROUND

11.    WBA provides architectural services primarily to corporations and businesses. The firm has developed expertise in designing and developing commercial buildings, with particular expertise in designing hotels and casinos. The sales cycle for WBA can often be quite long, sometimes extending more than a year. The projects on which WBA works can be quite large, ranging from tens of thousands of dollars, to more than $100,000,000. The bidding process generally requires that WBA invest significant resources up front to travel to meet with clients, prepare proposals and develop architectural plans and submissions.

12.    The architectural industry is highly competitive. WBA relies upon its personal relationships with its customers, vendors and sources; its knowledge of the architectural industry; its name; and its innovative methodology, procedures and insights in order to maintain its customer relationships and grow its business.

13.    WBA invests significant resources in marketing and obtaining contracts, and sends its sales staff to meet with customers and prospective customers at various locations throughout the United States and beyond. WBA often pays all or a substantial portion of the expenses incurred by its personnel to travel to meet with potential customers.

14.    WBA takes steps to maintain the confidential nature of its proprietary and trade secret information, including its customer information. It has detailed, written policies regarding confidentiality obligations. It requires users of its computer databases to have a specific user

name and password to access the database containing customer, project and lead information. Defendants O'Brien, Scott and Serrano acknowledged the confidential nature of WBA's business information throughout their employment.

15.   For approximately nine years, O'Brien worked as Business Development Vice President for WBA's Hospitality, Gaming and Entertainment Market.  Scott and Serrano worked as officers and Executive Committee members for several years as well.  During the course of their employment with WBA, defendants acquired knowledge, expertise and experience in WBA's business, methodology and procedures.  WBA made a substantial investment of its time, energy and resources in providing O'Brien, Scott and Serrano with the knowledge, expertise and experience they acquired.  As officers and Executive Committee members, O'Brien, Scott and Serrano had access to the highest level of confidential and proprietary information of WBA.

16.   In a coordinated and deliberate effort over the course of several months, defendants planned a group departure, deliberately withholding information and leads, and taking WBA information they deemed useful to them for purposes of competing with WBA.  They disclosed information to WBA's competitors and continue to wrongfully withhold and refuse to return WBA information.

17.   WBA Partners, Inc. was formed by defendants for the purpose of benefiting from WBA's good name and reputation, and further to compete with WBA.  WBA Partners has attempted to directly compete with WBA for architectural jobs in the hospitality industry, among other industries, and has held itself out as WBA as set forth in more detail below.

18.   The wrongful acts of defendants O'Brien, Scott, Serrano and DLR Group are willful, knowing and intentional.

A.    **WBA made a significant investment in developing business in the hospitality industry.**

19.    The architectural community has experienced increased financial pressure over the past few years due to the downturn in the economy.

20.    As the economy has declined, businesses have cut back on expansion plans, remodeling and new construction.   The demand for architectural services has declined dramatically in the past few years.

21.    WBA has taken significant cost-saving measures to address recent financial challenges.   Defendants O'Brien, Scott and Serrano have been involved in structuring these measures; including deciding which employees to lay off and how to further reduce expenses, including cutting salaries and benefits throughout the company.

22.    In an attempt to generate new business in a faltering environment, WBA has worked tirelessly to invest in and develop new business, particularly in the hospitality industry. Through these efforts, it has developed close business relationships with several key customers for whom it expects to procure significant business.

B.    **O'Brien, Scott and Serrano had access to confidential information during their tenures at WBA.**

23.    By virtue of their positions as officers and Executive committee members, O'Brien, Scott, and Serrano were given access to the highest level of WBA's confidential and proprietary information, including but not limited to names and contact information for existing and potential customers, WBA and customer financial information, the names and contact information for prospective customers, the types of services customers need, pricing and fee information, design proposals and concepts, and WBA's procedures and techniques for selling to and servicing its customers and prospects.   This confidential and proprietary information

constitutes trade secrets under applicable law, and/or is otherwise entitled to protection, and is collectively referred to as the "Trade Secrets" in the balance of this Complaint.

24.   WBA's Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. Having knowledge of WBA's Trade Secrets would give a competitor an unfair advantage in the market place.

**C.   Defendants' Embarked on a Deliberate Course of Wrongful Conduct Intended to Harm WBA.**

25.   On or about June 27, 2011, without the permission or knowledge of WBA, O'Brien, Serrano and Scott hired the law firm of Grannis & Hauge, P.A. to set up a separate company to directly compete with WBA. They named the company, "WBA Partners, Inc."

26.   O'Brien, Serrano and Scott were aware that WBA frequently shortened its name to "WBA" and used "WBA" in business communications. O'Brien, Serrano and Scott knew that "WBA Partners, Inc." was confusingly similar to "WBA" and they formed WBA Partners with the express intent of misappropriating WBA's name and goodwill for their own personal gain.

27.   O'Brien, Scott and Serrano repeatedly used WBA Partners, Inc. and WBA's name interchangeably in a deliberate and deceptive manner to create confusion with WBA's customers, prospective customers and business associates. Defendants intended to blur the lines between the two entities in the architectural community and ultimately take projects from WBA.

28.   Just three days after forming WBA Partners, O'Brien submitted a $7,000,000 "full service design proposal" to a potential client in New York. While the proposal was submitted through Walsh Bishop Associates, Inc. communication channels, O'Brien listed "WBA Partners" as the architect on both the Master Plan and Master Plan drawings, deliberately creating

confusion, blurring the distinction between the two entities, and with the intention of ultimately taking the project from WBA.

29.   On July 20, 2011, without WBA's permission or knowledge, O'Brien submitted a very large proposal on behalf of Walsh Bishop Associates to work on a large gaming and racing facility in Ohio. O'Brien deceptively titled the fee schedule, which is the primary contractual component of the proposal, in the name of "WBA Partners, Inc."

30.   In a further attempt to unfairly compete with WBA, O'Brien, Serrano and Scott used WBA funds to register WBA Partners for the largest trade show in the industry, scheduled to take place in October 2011. O'Brien listed his cell phone number as the company's telephone number. He did so knowing that he would not be employed at WBA at the time the conference took place, and to ensure attendance for WBA Partners, at WBA's expense.

31.   As part of planning their departure, defendants began to withhold information from WBA. For example, it was the custom and practice at WBA for more than 25 years to hold weekly meetings to discuss and share current projects and prospects. In approximately June 2011, defendants, who led the meetings, began cancelling the weekly meetings. In so doing, they withheld information from WBA and engaged in ongoing self-dealing and wrongful conduct.

32.   While still employed by WBA, O'Brien, Scott, and Serrano began contacting and meeting with WBA's direct competitors, including DLR Group, Inc., Welsh Companies and RSP Architects.

33.   These contacts and meetings referenced in the foregoing paragraph occurred during WBA work hours and through the use of WBA email.

34.   Defendants offered the foregoing competitors information about WBA projects and prospects, misrepresented the status of their employment and compensation with WBA, and discussed soliciting and bringing other WBA employees with them to the competitors.  O'Brien, Scott and Serrano missed client meetings, were in dereliction of their duties and breached their duties to WBA in connection with these meetings and communications.

35.   On August 3, 2011, O'Brien sent a list of his past projects to a prospective customer under the guise of WBA, yet signed his name as Partner and Account Manager of the Entertainment and Hospitality Group of WBA Partners.   WBA was unaware of this representation.

36.   On or about August 11, 2011, O'Brien, Scott and Serrano met with a representative of the Welsh Companies about future employment.  Upon information and belief, defendants represented that they would bring WBA accounts with them, acknowledging it was wrongful and expressing their concern of "possible legal action" in connection with their conduct.

37.   On August 12, 2011, DLR Group employee Matt Johnson sent an email to O'Brien, Scott and Serrano as a follow-up to a meeting.  Johnson eagerly outlined their strategy for an upcoming meeting with DLR Group principals.  Johnson instructed defendants regarding the "key message" for the meeting, particularly regarding the business that would "likely come with" the defendants:   "Projections – What will more than likely come with your immediate employment, High probability with next three months, within next 12 months."   Given the lengthy sales cycle for procuring architectural work, it is clear that DLR and the defendants were referring to WBA clients that defendants intended to bring to DLR Group.

38.   Upon information and belief, defendants discussed with WBA's competitors business opportunities they learned of during their employment with WBA, thereby providing

WBA's competitors with an unfair advantage that they would not have had, but for the wrongful conduct set forth herein.

39.    On or about August 16, 2011, O'Brien, Scott, and Serrano met with a representative of DLR Group about joining their group and bringing over WBA accounts.  They also talked about soliciting other current WBA employees to come over to DLR.  Defendants clearly understood the legal ramifications of bringing WBA customers to a competitor, even going so far as to acknowledge the "concern of legal action if brought over together."

40.    In mid August, defendants began removing items from their offices in anticipation of their planned departure.

41.    On August 18, 2011, O'Brien left a voice mail message for Scott in which he described a very large project (involving 7 casinos and a large hotel remodeling job) that he was pursuing with a potential customer in Mexico who was looking for a design proposal.  O'Brien disclosed that he "confidentially" told the prospective client about "our situation" and in a deliberate attempt to stall the prospective client until he could join his new employer, O'Brien told the prospective customer that if they could do the design proposal in two weeks, rather than the next week, that would be "great."

42.    Neither Scott, Serrano nor O'Brien disclosed the foregoing opportunity in Mexico to anyone at WBA.  Defendants usurped this corporate opportunity.

43.    On August 30, 2011, Scott sent WBA's confidential customer list to himself at his personal email address.  The list contained confidential customer information, including phone numbers and email addresses of key contacts as well as detailed notes Scott and others had acquired over a substantial period of time while procuring and building this customer list and these customer relationships on behalf of WBA.

10

44.   On August 30, 2011, Serrano sent to himself at his personal email address a drawing he prepared while employed at WBA.   The architectural drawing constitutes WBA company property.

45.   Defendants negotiated with their potential employers for compensation based on revenue they would generate during their first 12 months of employment, even though the only likely way they could generate revenue during said time frame would be to take WBA's customers or prospects.

46.   Without permission and authorization, defendants O'Brien, Scott and Serrano took WBA property, including confidential information, for their own use, for personal gain, for an unfair competitive advantage, and to cause harm to WBA.   Defendants downloaded such information onto their personal computers and electronic devices, and continue to wrongfully withhold WBA property, including confidential information.

## COUNT I

### VIOLATION OF 18 U.S.C. § 1030
### COMPUTER FRAUD AND ABUSE ACT AGAINST DEFENDANTS O'BRIEN, SCOTT, AND SERRANO

47.   WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

48.   On information and belief, defendants, using passwords obtained while with WBA, intentionally accessed confidential information stored on WBA's computers and servers for an unauthorized purpose.   In doing so, they "intentionally access[ed] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from [a] protected computer . . . [which] involved an interstate or foreign communication" as those terms are used in Title 18 of the United States Code, Section 1030(a)(2)(C).

49.     On information and belief, defendants accessed and removed WBA's computer information, including WBA's confidential customer lists and architectural drawings. Defendants downloaded this information from WBA's computer with the intention of using it to unfairly compete with WBA.   This involved transfer of confidential information through interstate channels and caused "loss" or "damage" (as those terms are used in Title 18, United States Code Section 1030) of at least $5,000.

50.     Defendants violated the statute in a manner that is both willful and intentional, and caused damage or loss to WBA as a result of the violation.  Accordingly, WBA is entitled to recover "compensatory damages" as stated in 18 U.S.C. § 1030(g).  Additionally, WBA seeks "injunctive relief" and "other equitable relief" under 18 U.S.C. § 1030(g).  WBA is also entitled to recover its attorney's fees and costs.

## COUNT II

### VIOLATION OF 18 U.S.C. § 2701, ET. SEQ.
### ELECTRONIC COMMUNICATIONS PRIVACY ACT AGAINST DEFENDANTS O'BRIEN, SCOTT, AND SERRANO

51.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

52.     Defendants, using passwords obtained while with WBA, intentionally accessed WBA's company database for an unauthorized purpose.  In doing so, they "obtained . . . access to a wire or electronic communication while it [was] in electronic storage in" an "electronic communication service" as those terms are used in Title 18 of the United States Code, Section 2701, et seq.

53.     The access was "engaged in with a knowing or intentional state of mind," as that phrase is used in Title 18, United States Code Section 2707(a).  Further, defendants violated the

statute in a manner that is both willful and intentional.  Accordingly, WBA is entitled to recover its "actual damages," "profits made" as a result of the violation, and the "costs of [this] action, together with reasonable attorney fees determined by the court."  In addition, WBA seeks "preliminary and other equitable relief" under 18 U.S.C. § 2707(b).  WBA seeks injunctive relief to limit the damage caused by defendants' misconduct. WBA is also entitled to recover reasonable attorney's fees and litigation costs as provided in 18 U.S.C. §2707(b)(3).

## COUNT III

### FEDERAL TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114 AGAINST ALL DEFENDANTS.

54.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

55.     Defendants O'Brien, Scott, Serrano and WBA Partners' activities constitute infringement of WBA's trade name in violation of the Lanham Trademark Act, including but not limited to 15 U.S.C. § 1125(a)(1).

56.     Because WBA advertises, markets, and conducts business under the Walsh Bishop Associates' name, as well as WBA, these trade names are the means by which WBA distinguishes itself from other competitors in the architectural industry.

57.     Because of WBA's long, continuous, and exclusive use of its trade names, its services have come be understood by customers and the public.

58.     Defendants' use of the WBA Partners' name is so similar to that of WBA that it is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of WBA Partners with WBA in direct violation of 15 U.S.C. 1125(a)(1)(A).

59.     Further, use of the WBA Partners' name is likely to lead the public to conclude,

incorrectly, that they are dealing with WBA, when WBA Partners is not authorized to act on WBA's behalf in any respect.

60.     Defendants used the WBA Partners' name with the purpose of misleading or confusing customers and the public about WBA's goodwill and business reputation.

61.     At a minimum, defendants acted with willful blindness to and in reckless disregard of WBA's name.

62.     As a result of their wrongful conduct, defendants are civilly liable to WBA for trade name infringement.  15 U.S.C. § 1125(a)(1).  WBA has suffered, and will continue to suffer, substantial losses.  WBA is entitled to recover damages, which include any and all profits defendants have made or will make as a result of their wrongful conduct.  15 U.S.C. § 1117(a).

63.     In addition, because defendants' infringement of WBA's trade name was willful within the meaning of the Lanham Act, the award of actual damages and profits should be trebled pursuant to 15 U.S.C. §1117(b).

64.     WBA is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) and 15 U.S.C. §1125(c)(1) for dilution by blurring.  WBA has no adequate remedy at law for defendants' wrongful conduct because, among other things, (a) WBA's trade name is unique and valuable property which has no readily determinable market value, (b) defendants' infringement constitutes harm to WBA such that WBA could not be made whole by any monetary award, (c) if defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived by the WBA Partners' name, and (d) defendants' wrongful conduct, and the resulting damage to WBA, is continuing.

65.     WBA is also entitled to recover its attorneys' fees and costs of suit.  15 U.S.C. § 1117.

## COUNT IV

## MINNESOTA COMMON LAW UNFAIR COMPETITION
## AGAINST ALL DEFENDANTS

66.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

67.     The acts and conduct of defendants O'Brien, Scott, Serrano and WBA Partners, as alleged above constitute unfair competition pursuant to the common law of the State of Minnesota.

68.     Defendants' conduct as alleged above has damaged and will continue to damage WBA's goodwill and reputation and has resulted in losses to WBA and an illicit gain of profit to defendants in an amount that is unknown at the present time.

## COUNT V

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
## AGAINST ALL DEFENDANTS

69.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

70.     WBA is well-regarded in the architectural community and has prospective economic relationships with its customers and prospective customers.

71.     Defendants are well-aware of WBA's prospective economic relationships with its customers and prospective customers, and they are well-aware that their attempts to withhold information and solicit business away from WBA interfere with these economic relationships.

72.     Defendants intended by their conduct to interfere with WBA's prospective economic relationships.

73.     Defendants intended by their conduct to harm and injure WBA.

74.     Defendants' interference with these relationships went beyond the scope of their responsibilities and outside of their duties as employees of WBA.

75.     WBA has been and continues to be harmed and injured by these interferences with its prospective economic relationships and seeks to recover actual damages from defendants, plus interest, attorney fees and costs.

**COUNT VI**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS
AGAINST ALL DEFENDANTS**

76.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

77.     Defendants have contacted, or intend to contact, WBA customers and prospects to solicit those customers on behalf of WBA Partners, Inc. and/or WBA's competitors.   This solicitation has taken place during their employment with WBA.

78.     During these solicitations, defendants have relied upon confidential information and trade secrets misappropriated from WBA. In so doing, defendants have employed wrongful means to intentionally cause WBA customers and prospects not to enter into prospective contracts with WBA.  But for the interference of defendants, WBA would have procured these contracts.

79.     WBA has (and will) suffer irreparable damage as a result of this conduct in soliciting WBA customers and prospects.  Under legal and equitable principals, WBA is entitled to recovery of its actual damages and punitive damages against defendants.  However, WBA has yet to determine its damages as a result of these statements, as the information necessary to determine these damages is in the possession of the defendants.  For this reason, at this time WBA seeks injunctive relief.

## COUNT VII

### BREACH OF THE DUTY OF LOYALTY
### AGAINST O'BRIEN, SCOTT AND SERRANO

80.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

81.     As officers and owners of WBA, defendants O'Brien, Scott and Serrano owed WBA a duty of loyalty.

82.     Defendants O'Brien, Scott and Serrano breached their duty of loyalty during their employment by acts including (but not limited to) soliciting business from WBA at a time when they were still employed by WBA; attempting to hire each other away from WBA while still employed by WBA; creating a separate company to directly compete with WBA without WBA's knowledge or permission; withholding information and diverting business from WBA; competing with WBA and using WBA's trade secrets, again at a time when they were employed by WBA, to move business from WBA to a direct competitor.

83.     As a result of defendants O'Brien, Scott and Serrano's breaches of the duty of loyalty, WBA has been damaged and is entitled to recover all wages and compensation paid to defendants since the date of their first breach of the duty of loyalty, as well as all profits that WBA would have earned from its customers but for defendants' breaches of their duties, in an amount to be determined by the Court.  WBA's damages include disgorgement of defendant O'Brien, Scott and Serrano's wages and benefits since the time of their breach.

84.     WBA will also be irreparably harmed by defendants' conduct and, therefore, is entitled to injunctive relief, and attorney's fees and litigation costs.

## COUNT VIII

### BREACH OF FIDUCIARY DUTY:
### FIDUCIARY DUTY NOT TO USURP CORPORATE OPPORTUNITIES
### AGAINST DEFENDANTS O'BRIEN, SCOTT, AND SERRANO

85.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

86.     O'Brien, Scott and Serrano, as officers and owners of the company, owed WBA the duty to act as a fiduciary.  This obligation includes (but without limitation), the duties of loyalty, good faith, and fidelity, confidentiality, and fair dealing.

87.     O'Brien, Scott and Serrano have breached their fiduciary and other duties owed to WBA.  For example, (but without limitation), they created a separate company for their own personal benefit, using WBA's name and goodwill to compete with WBA and submit proposals in the name of this newly-formed entity, but under the guise of WBA.  In addition, they tricked WBA into paying for WBA Partners' attendance at the annual industry conference in place of WBA. They cancelled the company's long-standing weekly meetings and withheld information. They further stalled business opportunities by asking a potential WBA customer to wait a couple weeks before moving forward on various projects. And they represented to potential employers and competitors of WBA that they would be able to bring over multiple, large-scale accounts even though they recognized the potential legal consequences of doing so.

88.     WBA has been severely damaged as a direct and proximate result of O'Brien, Scott and Serrano's breach of their respective fiduciary obligations.   The damages have yet to be calculated and fully understood.

89.     O'Brien, Scott and Serrano have been unjustly enriched as a result of their breach of their fiduciary and other obligations.  This unjust enrichment includes all profits derived from

corporate opportunities diverted from WBA, all compensation paid by WBA to them during the period in which they have been in violation of their obligations and the attorney's fees and litigation costs that WBA has reasonably incurred to defend these actions.  These sums should be returned to WBA to avoid injustice.

**COUNT IX**

**CIVIL CONSPIRACY
AGAINST ALL DEFENDANTS**

90.    WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

91.    Defendants O'Brien, Scott, Serrano and WBA Partners, Inc. have agreed and conspired with one another and otherwise acted in concert to commit and further the wrongful acts as set forth herein.

92.    Defendants O'Brien, Scott, Serrano and WBA Partners, Inc. have engaged in a course of conduct toward the commission of various unlawful objectives, including but not limited to using knowledge they obtained while working at WBA to solicit WBA's customers and to solicit WBA employees to work for WBA's direct competitor to wrongfully obtain an unfair competitive advantage.

93.    WBA has been damaged as a result of the defendants' conduct in conspiring by and among each other to commit and further the wrongful acts set forth herein.  WBA has also suffered irreparable harm and will continue to suffer irreparable harm unless the unlawful conduct of defendants is enjoined by this Court.

## COUNT X

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF
### MINN. UNIFORM TRADE SECRETS ACT, MINN. STAT. § § 325C.01, *et. seq.*
### AGAINST DEFENDANTS O'BRIEN, SCOTT AND SERRANO

94.     WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

95.     While at WBA, defendants O'Brien, Scott and Serrano became aware of confidential, proprietary information.  The information identified in the previous paragraphs of this Complaint derived independent economic value from being generally not known to (and not being readily ascertainable by proper means by) WBA's competitors (including, without limitation, WBA Partners, Inc. and DLR Group).

96.     The information WBA seeks to protect was (and is) the subject of reasonable efforts to maintain its secrecy.  Such information was gained at WBA's expense.

97.     The information described in the previous paragraphs of this Complaint was disclosed to defendants under circumstances where they knew (or should have known) that WBA expected the information was intended to remain confidential.  Defendants have a duty to maintain the secrecy of WBA's Trade Secrets.

98.     Defendants O'Brien, Scott, and Serrano's actual, threatened, and/or inevitable disclosure and withholding of the information described in the previous paragraphs of this Complaint constitutes misappropriation of WBA's trade secrets and is a violation of the Minnesota Uniform Trade Secrets Act, Minnesota Statutes Sections 325C.01, *et. seq.* Defendants have or inevitably will breach their duty to maintain the secrecy of WBA's customer information.  By doing so, they have (or inevitably will) "disclos[e] or use" WBA's trade secrets without its "express or implied consent."  Minn. Stat. § 325C.01, subd. 3(ii).

99.     WBA has been or inevitably will be damaged by defendants' disclosure of its

Trade Secrets.  Accordingly, WBA is entitled to damages as set forth in Minnesota Statutes Section 325C.02.

100.    Because defendants' actions were willful and deliberate, WBA is also entitled to recover its attorney's fees, as authorized by Minnesota State 325C.04.

101.    WBA further requests that the Court enjoin defendants "[a]ctual or threatened misappropriation" as authorized by Minnesota Statutes Section 325C.02 and further order the return of information that defendants continue to wrongfully withhold from WBA.

**COUNT XI**

**COMMON LAW TRADE NAME INFRINGEMENT
AGAINST ALL DEFENDANTS**

102.    WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

103.    Walsh Bishop Associates' name retains special significance in the architectural trade based on its long-standing presence in the community.

104.    WBA has an exclusive right to use the Walsh Bishop trade name with regard to the architectural services that it offers in the business community.

105.    O'Brien, Scott, Serrano, and WBA Partners, through the incorporation of WBA Partners, Inc., knowingly and intentionally adopted WBA's trade name, or a confusing and confusingly similar variation of that name, with the intention of deriving benefit from WBA's reputation such that a purchaser of architectural services would be reasonably likely to be deceived by the true identity of the entity providing the services and further misled into believing that he or she is getting services from WBA, when he or she is actually getting services from WBA Partners.

106.   WBA has been damaged by defendants O'Brien, Scott, Serrano and WBA Partner's infringement of its trade name and is entitled to damages, including, but not limited to, actual damages and injunctive relief and costs and attorneys fees.

## COUNT XII

### VIOLATION OF MINNESOTA DECEPTIVE TRADE PRACTICES ACT AGAINST ALL DEFENDANTS

107.   WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

108.   By using WBA's name to form a separate company with a similarly-sounding name for their own personal benefit, O'Brien, Scott, Serrano and WBA Partner's actions constitute violations of the Minnesota Deceptive Trade Practices Act, Minn.Stat. §325D.43-48.

109.   WBA's good name and reputation comprises the primary means by which the company distinguishes itself from competing architectural firms.

110.   Because of WBA's long and exclusive use of its trade name, the company has come to be recognized and understood by customers and vendors in the community.

111.   Defendants have and are continuing to use, offer, advertise, market, and make use of WBA's name and are likely to cause confusion, mistake, or deception by use of that name to the public.

112.   Defendants activities are likely to lead the public to conclude, incorrectly, that WBA Partners is a part of or affiliated with WBA, to the damage and harm of WBA, and the public.

113.   Defendants have used, offered, advertised, marketed, and made use of WBA's good name with the purpose of misleading or confusing customers and the public as to the true nature of WBA Partners.

114.   As a result of their wrongful conduct, defendants are liable to WBA for violations of the Minnesota Deceptive Trade Practices Act.  Minn. Stat. § 325D.44 subd. 1.  WBA has suffered, and will continue to suffer, substantial losses.  WBA is entitled to recover damages, which include any and all profits defendants have made as a result of their wrongful conduct.

115.   WBA is also entitled to injunctive relief pursuant to Minnesota Statutes section 325D.45 subd. 1, attorneys' fees and costs of suit.  Minn. Stat. § 325D.45 subd. 2.

## COUNT XIII

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

116.   WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

117.   Because defendants received significant value from WBA through means of misappropriation of confidential information and tortious interference with prospective customers, defendants have been enriched unjustly.

118.   Because of the unjust enrichment of defendants at the expense of WBA, equity requires defendants to pay WBA damages in an amount to be determined, plus accrued and accruing interest, as well as disgorgement of profits and salary, as well as attorney's fees and costs.

## COUNT XIV

### INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

119.   WBA repeats and realleges each of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

120.   As a result of defendants' conduct, including violation of the Lanham Act, breaches of loyalty and fiduciary duty, tortious interference with prospective contracts and

prospective economic advantage, civil conspiracy, violations of the Minnesota Uniform Trade Secrets Act and Minnesota's Deceptive Trade Practices Act, unfair competition, trade name infringement, and misappropriation of confidential information, WBA has been or will be materially damaged and irreparably harmed. WBA is entitled to injunctive relief restraining and enjoining defendants (and anyone connected with them) from using information obtained and learned while working for WBA and from doing business with customer(s) and prospects they had contact with or learned of while employed by WBA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WBA prays for the following relief:

1. That defendants are enjoined for a period of not less than eighteen (18) months from soliciting work from any company or entity that was a client of WBA during the 24 months preceding the filing of this action.

2. That defendants are enjoined for a period of not less than eighteen (18) months from soliciting work from any person, company or entity that was actively solicited by WBA and for whom WBA invested financial resources during the 24 months preceding the filing of this action.

3. That defendants are enjoined for a period of not less than eighteen (18) months from soliciting work from any person, company or entity that defendants learned (while employed by WBA) was or would be in need or architectural services.

4. That defendants are ordered to return to WBA all information, in whatever form it may exist, relating in any way to WBA, its customers or its prospects.

5. That defendants are enjoined from directly or indirectly retaining, possessing, acquiring, seeking to obtain or acquire, using, or disclosing any information that relates to WBA, including but not limited to its Trade Secrets and confidential and proprietary information;

6. That WBA Partners, Inc. is enjoined from using WBA's trade name or any name that is confusingly similar, including but not limited to "WBA Partners" or any variation thereof;

7. That defendants are restrained from utilizing, making use of, or disclosing to anyone any information obtained from WBA. This information includes but is not limited to the following:

- The identity of WBA customers and clients, including customer contact information;
- The identity of WBA's prospects;
- Information relating to projects, proposals and designs developed by WBA;
- Information relating to the needs of WBA's clients and prospects;
- WBA's accounts receivable information;
- WBA's sales and marketing strategies; and
- Information relating to WBA's sales, pricing, fees, profit, margin and other financial information.

8.  A judgment in favor of WBA and against the defendants for all compensable injuries and for all defendants in an amount to be proven at trial and including punitive or exemplary damages, plus interest, costs, and attorneys' fees;

9.  Restitution and disgorgement of all profits made through use of information obtained from WBA;

10. Restitution and disgorgement of all salary and other compensation and benefits paid to or on behalf of the individual defendants; and

11. Such other and further relief as this court may deem just and proper.

Plaintiff intends to amend its Complaint to seek punitive damages as allowed by law.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury, composed of the maximum number of jurors allowed by law on all issues where jury trial is permitted.

Dated:  September 15, 2011

Mary M. O'Brien, #177404
Debra L. Weiss, #288810
MEAGHER & GEER, P.L.L.P.
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
(612) 338-0661
*Attorneys for Plaintiff Walsh Bishop Associates*

8054324.4



**MEAGHER&GEER**
ATTORNEYS AT LAW   PLLP

33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
PHONE: 612/338-0661
FAX: 612/338-8384
MEAGHER.COM

DIRECT DIAL: (612) 347-9142
EMAIL: dweiss@meagher.com

**VIA MESSENGER**

September 15, 2011

Clerk of Court
UNITED STATES DISTRICT COURT
300 South Fourth Street, Ste. 202
Minneapolis, MN 55415

RECEIVED

SEP 15 2011

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Re:   *Walsh Bishop Associates v. Keith O'Brien, et. al.*
      Our File No.:   51671-6

Dear Clerk of Court:

Enclosed herein for filing, along with the required $350 filing fee, please find the following:

1.   Plaintiff's Civil Cover Sheet;
2.   Summons for each Defendant; and
3.   Complaint.

Please provide our messenger with executed Summons for service upon defendants.  Thank you for your attention to this matter.

Very truly yours,

*Debra L. Weiss*

Mary M.L. O'Brien
Debra L. Weiss

DLW/cjm/8069020.1
Enclosures